UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RICKIE BILL GILLIAM,

    Petitioner,

        v.                         CAUSE NO. 3:19-CV-88-JD-MGG

WARDEN,

    Respondent.

## OPINION AND ORDER

Rickie Bill Gilliam, a prisoner without a lawyer, filed a habeas corpus petition challenging his 2012 conviction in Tippecanoe County under cause number 79D02-1201-FA-1 for attempted murder, attempted battery, possession of a firearm after a serious felony conviction, dealing marijuana, and maintaining a common nuisance. (ECF 2.) For the reasons stated below, the petition is denied.

I.    BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Mr. Gilliam's burden to rebut this presumption with clear and convincing evidence. *Id.* On direct appeal, the Indiana Court of Appeals set forth the facts underlying his conviction as follows:

> Heather Short and Gilliam were involved in a romantic relationship for approximately three years and lived together in Lafayette with their three-year-old son. In December 2010, the couple argued and Gilliam pulled out a gun. Gilliam stated that he would "kill [Heather] with the gun if [she]

didn't knock [her] sh*t off." Heather[1] was scared and would not leave the couple's bedroom. At some point, Heather sent a text message to her brother, Jeremiah Short, who came to the house and went to Heather's bedroom window. Jeremiah talked to Heather and wanted her to leave with him; however, Heather declined.

On January 8, 2011, Heather and Gilliam ended their relationship. Heather went to Jeremiah's to stay, and at some point, Heather and Jonathan Beard, Jeremiah's roommate, began a sexual relationship. On January 14, 2011, Heather drove Beard to his job at Penguin Liquors. Heather asked Beard if he knew of any place where she could stay that night because she "was trying to avoid her son's father." Beard offered to rent her a motel room for the weekend. After Beard's shift ended at 2:00 a.m., Heather picked him up and drove to an Economy Inn, where Beard paid for a room.

After pulling up to one of the rooms, Heather and Beard noticed that the number on the door was not the same room that he had rented. Heather put the car in reverse, but at that moment, Gilliam drove up in a red vehicle. Gilliam exited his car and started shooting at Heather and Beard with a handgun. Numerous rounds hit the body of the vehicle and the windows. Beard hunched down to avoid being shot and Heather accelerated. Gilliam fired another shot that struck Heather's windshield.

After Heather drove away, she contacted 911 and reported that Gilliam had tried to kill her and Beard. Shortly after the call, several police officers went to Gilliam's residence and noticed a red Chevy Impala parked in the driveway, but the license plate on the vehicle was registered to Gilliam's red Pontiac Grand Prix. The Impala was slightly covered in snow, and the engine was cold.

The officers set up a perimeter around the house and although a television was on, no one was observed entering or exiting the house. Later that morning, a SWAT team searched the house and confirmed that no one was inside. The officers discovered twelve rounds of .9mm Ruger ammunition, as well as several bags of marijuana, marijuana cigarettes, rolling papers, and digital scales. Several .25 caliber shell casings were found in the motel parking lot where the shooting occurred.

---

[1] The court notes that the Indiana Court of Appeals referred to Ms. Short by her first name throughout its opinion, perhaps to distinguish her from her brother, Jeremiah Short, who was also involved in these events. *See Gilliam v. State*, 985 N.E.2d 372 (Table), 2013 WL 1299868, at *1-*3 (Ind. Ct. App. Apr. 1, 2013). For consistency, this court refers to her in the same manner.

2

On the day of the shooting, Heather and Beard positively identified Gilliam from a photo array. Later that week, Jeremiah, who was Gilliam's friend, observed Gilliam driving a red Pontiac Grand Prix. On February 14, 2011, the State charged Gilliam with the following offenses:

Count I—Attempted Murder, a class A felony
Count II—Attempted Murder, a class A felony
Count III—Attempted Aggravated Battery, a class B felony
Count IV—Attempted Aggravated Battery, a class B felony
Count V—Attempted Battery, a class C felony
Count VI—Attempted Battery, a class C felony
Count VII—Criminal Recklessness, a class C felony
Count VIII—Carrying a Handgun Without a License, a class A misdemeanor
Count IX—Pointing a Firearm, a class D felony
Count X—Pointing a Firearm, a class D felony
Count XI—Dealing in Marijuana, a class D felony
Count XII—Possession of Marijuana, a class D felony,
Count XIII—Maintaining a Common Nuisance, a class D felony
Count XIV—Serious Violent Felon in Possession of a Firearm, a class B felony

On December 29, 2011, the State filed a notice under Indiana Evidence Rule 404(b), indicating that the State intended to offer evidence of the previous incident in December 2010 involving Gilliam's threat to kill Heather with a handgun.

Following a hearing on December 30, 2011, the trial court ruled that evidence of the earlier incident would be admissible because it was relevant to show motive, intent, identity, and absence of mistake and accident. The trial court also noted that it would give a limiting instruction to the jury.

On April 9, 2012, Beard spoke with Officer Michael Barthelemy and again identified Gilliam as the shooter. Beard told Officer Barthelemy that Gilliam was approximately five feet away when the shooting occurred.

Gilliam's jury trial commenced on April 16, 2012. At trial, Heather's account of the events changed in several respects. For instance, Heather had previously told police that Gilliam had been dealing in marijuana. However, at trial, she claimed that she did not remember making that statement. When asked about the fact that Gilliam had threatened to kill

3

> her, Heather claimed that she "guessed" that was accurate. Similarly, although Heather had previously stated that she was afraid of Gilliam when he threatened to kill her, she claimed at trial that she was not really scared. Finally, although Heather had previously reported to the police that she had seen Gilliam after the first gunshot, she claimed at trial that she assumed it was him because she had seen the red car.
>
> Laura Berry–Bermann, the Executive Director for the Indiana Coalition Against Domestic Violence, also testified at trial. Berry–Bermann testified that it is not unusual for a woman in circumstances similar to those experienced by Heather to subsequently recant or modify a prior identification of the person who committed the charged offense. Berry–Bermann stated that there are many possible explanations for this phenomenon, including a fear of retaliation and future violence, fear of the loss of income and support for a child that they may share in common, and loyalty to the father of their child.

*Gilliam v. State*, 985 N.E.2d 372 (Table), 2013 WL 1299868, at *1-*3 (Ind. Ct. App. Apr. 1, 2013) (internal citations omitted). At the close of the evidence, the jury found him guilty as charged, with the exception of the serious violent felon charge, which was resolved at a bench trial in a bifurcated proceeding. *Id.* Mr. Gilliam was found guilty of that offense as well. *Id.* He was sentenced to an aggregate 63-year prison term. *Id.*

On direct appeal, Mr. Gilliam raised the following claims: (1) the trial court erred under Indiana law in admitting evidence related to the prior incident in which he threatened to kill Heather; (2) the evidence was insufficient to support his attempted murder and firearms convictions because he had not been adequately identified as the shooter; and (3) his sentence was inappropriately long under state law when considering the nature of the offense and his character. *Id.* at *4-6. The Indiana Court of Appeals rejected each of these arguments and affirmed Mr. Gilliam's conviction and

4

sentence in all respects. *Id.* at *6. The Indiana Supreme Court denied transfer. *Gilliam v. State*, 988 N.E.2d 267 (Ind. 2013).

Thereafter, Mr. Gilliam sought post-conviction relief alleging ineffective assistance of trial counsel. *Gilliam v. State*, 113 N.E.3d 814 (Table), 2018 WL 6005650 (Ind. Ct. App. Nov. 16, 2018). Following a hearing at which he was represented by new counsel, the petition was denied. *Id.* at *3. On appeal, Mr. Gilliam proceeded *pro se* and raised the following arguments: (1) his trial counsel was ineffective in failing to object to the testimony of Berry-Bermann, the domestic violence advocate, as her testimony lacked a proper foundation and amounted to improper vouching under state law; (2) his trial counsel was ineffective in failing to object to Heather's testimony regarding his use of marijuana; (3) his trial counsel was ineffective in failing to object to the testimony of Lieutenant Brad Hayworth, one of the investigating officers, that Heather told him she had seen Mr. Gilliam dealing drugs when they lived together; and (4) his post-conviction counsel was ineffective in not subpoenaing his trial counsel to testify at the post-conviction hearing. *Id.* at *5-8. The court found the first two arguments waived under state law as inadequately developed, but alternatively concluded that they failed on the merits. *Id.* The court found the third and fourth arguments unavailing on the merits. *Id.* The court observed that Mr. Gilliam appeared to raise a number of other issues in his *pro se* brief that were "too poorly developed or expressed to be understood." *Id.* at *4. The court found all such arguments waived under state law, and affirmed the denial of post-conviction relief. *Id.* Mr. Gilliam sought transfer to the

Indiana Supreme Court. (ECF 12-13.) The petition was denied. *Gilliam v. State*, 121 N.E.3d 121 (Ind. 2019).

Thereafter, Mr. Gilliam filed his federal petition, claiming as follows: (1) his post-conviction attorney was ineffective in failing to call his trial counsel as a witness at the post-conviction hearing; (2) his trial counsel was ineffective in failing to object to Berry-Bermann's testimony; (3) his trial counsel was ineffective in failing to object to testimony by another officer about who Lieutenant Hayworth interviewed during his investigation; (4) his trial counsel was ineffective in failing to object on hearsay grounds when Beard described text messages he had received from Heather a few months after the shooting asking him to consider recanting his identification of Mr. Gilliam as the shooter; (5) his trial counsel was ineffective in failing to attack Beard's credibility for truthfulness; and (6) his trial counsel was ineffective in failing to object to testimony from an investigating officer about Heather and Beard fleeing the motel parking lot. (ECF 2 at 5-11.)

II.     ANALYSIS

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person who is in custody pursuant to a state court judgment "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To obtain relief, a petitioner must meet the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

6

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Hoglund*, 959 F.3d at 832 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). In other words, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

In claim one, Mr. Gilliam asserts that his post-conviction attorney was ineffective in failing to call his trial counsel as a witness at the post-conviction hearing. (ECF 2 at 5-6.) The respondent argues that this claim is not cognizable on federal habeas review. (ECF 12 at 16-17.) The court agrees. There is no Sixth Amendment right to counsel in a post-conviction proceeding. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Where there is no constitutional right to counsel, there

7

can be no deprivation of effective assistance of counsel.[2] *Coleman*, 501 U.S. at 752. Indeed, AEDPA specifically provides: "The ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Accordingly, this claim does not present a cognizable basis for overturning Mr. Gilliam's conviction.

All of Mr. Gilliam's remaining claims center on the performance of his trial counsel. (ECF 2 at 7-12.) Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009). To prevail on such a claim, the petitioner must show that counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a federal habeas proceeding: "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

---

[2] The Supreme Court has recognized that in certain circumstances, errors by post-conviction counsel can provide cause to set aside a procedural default. *Trevino v. Thaler*, 569 U.S. 413 (2013); *Martinez v. Ryan*, 566 U.S. 1 (2012). That is not what Mr. Gilliam is trying to do here; rather, he asserts a free-standing claim based on the performance of his post-conviction counsel. (ECF 2 at 5-6.)

8

Furthermore, the court should "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight, " *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017). Rather, "[i]t must merely be reasonably competent." *Id.* Counsel is also afforded significant discretion in selecting a trial strategy based on the information known at the time. *Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011). If the defendant wanted counsel to raise an argument that itself had no merit, an ineffective assistance claim cannot succeed, because "[c]ounsel is not ineffective for failing to raise meritless claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *see also Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Richter*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id*. at 112.

9

Mr. Gilliam first claims that his trial counsel was ineffective in failing to object to Berry-Bermann's testimony on two grounds: lack of foundation and inappropriate "vouching" under state law. (ECF 2 at 7-8.) Specifically, he believes that this domestic violence advocate should not have been able to testify because there was no evidence he had previously "battered" Heather. (*Id.*) He further argues that the sole purpose of her testimony was to improperly vouch for the credibility of Heather's original identification of him as the shooter. (*Id.*) The respondent argues that this claim is procedurally defaulted and otherwise without merit. (ECF 12 at 10-14.)

As to that portion of the claim challenging counsel's failure to object based on lack of foundation, the Indiana Court of Appeals found this claim waived under Indiana Appellate Rule 46(A)(8) as "unsupported by cogent reasoning or adequate citation to authority." *Gilliam*, 2018 WL 6005650, at *7. A finding of waiver constitutes an adequate and independent state procedural ground that bars federal habeas review. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009); *see also Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir. 1992) ("A federal court reviewing a habeas petition is required to respect a state court's finding, under state law, of waiver or procedural default."). Therefore, this aspect of his claim is procedurally defaulted.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice. *Davis v. Davila*, 137 S. Ct. 2058, 2064 (2017). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented the petitioner from pursuing his constitutional claim in state court. *Id.* (quoting *Murray v. Carrier*, 477 U.S.

10

478, 488 (1986)). A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006).

In his traverse, Mr. Gilliam appears to argue that his procedural default is attributable to errors by his post-conviction counsel. (ECF 23 at 18-26.) Attorney error rising to the level of ineffective assistance of counsel can amount to cause sufficient to excuse a procedural default. *Davila*, 137 S. Ct. at 2065; *Trevino v. Thaler*, 569 U.S. 413 (2013). However, the default at issue occurred during the post-conviction appeal, at a time when Mr. Gilliam was representing himself. His own failure to properly develop this argument in his *pro se* appellate brief cannot be considered a factor "external to the defense" that would provide cause to set aside the default. *See Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018) (observing that cause sufficient to set aside a default only applies to factors that "cannot fairly be attributed to the prisoner"). He has not provided cause to set aside the default.

Assuming the claim was not defaulted, the Indiana Court of Appeals alternatively found no merit to the claim. *Gilliam*, 2018 WL 6005650, at *4. In analyzing the claim, the court properly recognized *Strickland* as the governing standard. *Id.* The court concluded that, under Indiana law, a foundation was properly laid for Berry-Bermann's testimony based on the evidence that Mr. Gilliam had previously threatened Heather with a gun. *Id.* at *5. Thus, the court concluded that counsel was not deficient in failing to raise an objection on this ground. *Id.* This court is bound by the state court's determination of state evidentiary law in deciding whether counsel was ineffective in

11

failing to object. *See Harper v. Brown*, 865 F.3d 857, 861 (7th Cir. 2017) ("[O]n § 2254 habeas review, we cannot disagree with a state court's resolution of an issue of state law." (citation and internal quotation marks omitted)); *Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (federal habeas court cannot "second-guess state courts in interpreting state law," and thus the court was bound by state's determination that an objection would have been unavailing under state law in assessing petitioner's ineffective-assistance claim). Because an objection on this ground lacked merit under state law, Mr. Gilliam has not established deficient performance or prejudice based on counsel's failure to object. *Warren*, 712 F.3d at 1104; *Stone*, 86 F.3d at 717. Thus, even if the claim were not defaulted, it would not entitle him to federal habeas relief.

As to the second portion of this claim related to counsel's failure to object to inappropriate "vouching," the Indiana Court of Appeals again found that such an objection would have been unavailing under state law. *Gilliam*, 2018 WL 6005650, at *6. Mr. Gilliam argued that Berry-Bermann's testimony violated *Odom v. State*, 711 N.E.2d 71 (Ind. Ct. App. 1999), which outlined the parameters of expert testimony pertaining to recantations by domestic violence victims. The Indiana Court of Appeals rejected his argument. *Gilliam*, 2018 WL 6005650, at *6. Specifically, the court held that Berry-Bermann's testimony was admissible under *Odom* and Indiana Rule of Evidence 704(b) governing "pattern, profile and syndrome evidence," in light of the evidence of Mr. Gilliam and Heather's past history of violence. *Id.* Again, this court is bound by the state court's interpretation of state evidentiary law. *Harper*, 865 F.3d at 861; *Earls*, 379 F.3d at 495. Because an objection on this ground lacked merit under state law, Mr. Gilliam has

not established deficient performance or prejudice based on counsel's failure to object. *Warren*, 712 F.3d at 1104; *Stone*, 86 F.3d at 717. Thus, this claim does not entitle him to federal habeas relief.

In his remaining claims, Mr. Gilliam asserts that his trial counsel was ineffective in failing to object to testimony about Lieutenant Hayworth's investigation; failing to object on hearsay grounds when Beard described the text messages he had received from Heather; failing to adequately attack Beard's credibility for truthfulness; and failing to object to testimony from an investigating officer about Heather and Beard fleeing the motel parking lot. (ECF 2 at 8-11.) The respondent argues that all of these claims are procedurally defaulted because the Indiana Court of Appeals found them waived under state law. (ECF 12 at 14-15.)

As discussed above, the Indiana Court of Appeals found all but the specifically enumerated claims in Mr. Gilliam's appellate brief waived under Indiana Appellate Rule 46(A)(8) as "unsupported by cogent reasoning or adequate citation to authority." *Gilliam*, 2018 WL 6005650, at *5. A finding of waiver constitutes an adequate and independent state procedural ground that bars federal habeas review. *Sturgeon*, 552 F.3d at 611; *Bobo*, 969 F.2d at 399. Mr. Gilliam has not identified an "objective factor external to the defense" that prevented him from pursuing his claims in state court. *Davila*, 137 S. Ct. at 2064. He therefore has not established cause to set aside his default, and the court cannot reach these claims on the merits.

For the sake of completeness, the court notes that the only other claim the Indiana Court of Appeals found properly developed in Mr. Gilliam's *pro se* brief — other

13

than those already discussed—was his claim that trial counsel was ineffective in failing to object to Lieutenant Hayworth's testimony that Heather made a statement to him about Mr. Gilliam's drug-dealing. *Gilliam*, 2018 WL 6005650, at *8. Mr. Gilliam argued in the state proceedings that this testimony was irrelevant and cumulative, because Heather had already admitted to making the statement. *Id.* Mr. Gilliam does not appear to include this claim in his petition, although he mentions it in his traverse. (ECF 23 at 10.) A traverse is not the place to raise new grounds for habeas relief for the first time. RULE 2 OF THE RULES GOVERNING SECTION 2254 CASES (providing that the petition must "specify all the grounds for relief").

Assuming Mr. Gilliam's petition could be read to encompass this claim, the court could not conclude that the state court's resolution of this claim was objectively unreasonable. As the state court observed, evidence about Mr. Gilliam's drug-dealing was directly relevant because he was charged with several drug offenses, including dealing in marijuana. *Gilliam*, 2018 WL 6005650, at *7. The state court further concluded that Lieutenant Hayworth's testimony was admissible under Indiana Rule of Evidence 607, in light of Heather's testimony on direct examination equivocating about whether she made such a statement. *Id.* at *8. This court is bound by the state court's interpretation of state evidentiary law regarding the admissibility of this evidence, and thus Mr. Gilliam cannot establish deficient performance or prejudice based on counsel's failure to object on this ground. *Warren*, 712 F.3d at 1104; *Stone*, 86 F.3d at 717. Therefore, even if he had properly asserted this claim, it would not entitle him to federal habeas relief.

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Mr. Gilliam's claims do not entitle him to federal habeas relief. The court finds no basis to conclude that jurists of reason could debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

III. CONCLUSION

For the reasons set forth above, the petition (ECF 2) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on December 7, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

15